UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ELIJAH MISSOURI, ) | Civil Action No.: 4:13-1326-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| PEGGY SPIVEY, KERSHAW COUNTY, ) | |
| CRYSTAL RUFUS-HODGE, SUSAN ) | |
| LOPEZ, and SOUTHERN HEALTH ) | |
| PARTNERS; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.     INTRODUCTION

In this action, arising out of Plaintiff's detention as a pre-trial detainee at the Kershaw County Detention Center (KCDC), Plaintiff seeks relief for federal constitutional violations under § 1983. He also asserts a state law claim for gross negligence.[1] Plaintiff originally filed this action in the Court of Common Pleas, Kershaw County, South Carolina. Defendants removed the case to this court on May 15, 2013. Presently before the Court are Defendants South Carolina Health Partners and Susan Lopez's (collectively the Southern Health Defendants) Motion for Summary Judgment (Document # 32) and Defendants Kershaw County, Crystal Rufus-Hodge and Peggy Spivey's (the County Defendants) Motion for Summary Judgment (Document # 33).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because the

---

[1]In his Responses to the Motions for Summary Judgment, Plaintiff seeks to dismiss the first three counts for injunctive relief as well as his gross negligence claim against Defendants Spivey, Rufus-Hodge and Lopez.

Motions for Summary Judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

## II.     FACTS

Plaintiff was a pretrial detainee at KCDC from August of 2012 to April of 2013. Defendants Crystal Rufus-Hodge and Peggy Spivey are, respectively, the Director and Deputy Director of KCDC. Answer to Interrogatory 13 (Ex. 1 to Southern Health Defendants' Motion). Defendant Southern Health is a third-party medical services company with whom Defendant Kershaw County contracted to provide medical services at KCDC. Defendant Lopez is a nurse with Southern Health who was assigned to KCDC during a portion of the time Plaintiff was detained there. Plaintiff alleges that during September of 2012, he fell in the shower at KCDC and dislocated his shoulder and thumb and fractured his spine. Complaint ¶ 14. Plaintiff alleges that Defendants refused him medical treatment for these injuries. Id. at ¶ 2.

The evidence in the record reveals that the medical department received a sick call from Plaintiff on September 12, 2012, in which he reported that he had fallen four days earlier.[2] Cunningham Aff. ¶ 5 and Ex. A (Ex. 3 to Southern Health Defendants' Motion). Plaintiff was seen on September 13, 2012, and complained of pain at the back of his neck, but the nurse found no swelling or bruising or any other symptoms that would indicate a serious condition. Id. Dr. Kievers

---

[2]Plaintiff avers that he "immediately asked to see medical and was denied medical treatment." Pl. Aff. ¶ 5 (Ex. 30 to Pl. Responses). However, the records are not entirely clear about exactly when Plaintiff fell in the shower. Plaintiff avers that he fell on September 10, 2012. Pl. Aff. ¶ 3. On the sick call form he completed on September 12, 2012, Plaintiff indicated that he fell in the shower, the top part of his back hurt, and he had had the problem for four days. Inmate Sick Call Slip (Ex. 4 to Pl. Responses). The nurse who saw Plaintiff on September 13, 2012, indicated that Plaintiff fell "two days ago." Id. Nevertheless, a delay in treatment is actionable under § 1983 only where the delay results in some substantial harm to the patient. Webb v. Hamidullah, 281 Fed. Appx. 159, 166 (4th Cir.2008). Plaintiff presents no such evidence.

Cunningham, who served as medical director at KCDC at all relevant times pursuant to a contract with Southern Health, determined that Plaintiff was suffering from muscle strain. Id. The nurse who attended to him issued a prescription for Ibuprofen for pain. Id. On September 20, 2012, following another sick call request from Plaintiff, Dr. Cunningham ordered x-rays of Plaintiff's spine and hand.[3] Id. at ¶ 6. The x-ray of Plaintiff's hand was negative for any fracture or bone or soft tissue abnormality. Lopez Aff. ¶ 13 (Ex. 2 to Southern Health Motion); Cunningham Aff. ¶ 7 with attached record. The X-ray of Plaintiff's spine revealed degenerative changes in Plaintiff's spine, "a small anterior fractured osteophyte off the anterior inferior endplate of C4," and "straightening of the normal lordotic curvature . . . which is typically associated with pain or muscle spasm." Cunningham Aff. ¶ 14 and Ex. C. Plaintiff was diagnosed with muscle strain and spasm. Lopez Aff. ¶¶ 3, 13; Cunningham Aff. Plaintiff was seen at least six more times for the same complaints of neck and back pain and headaches. Plaintiff received prescriptions for pain medication, muscle relaxers, and/or anti-inflammatory medication on September 13, 20, 26, October 5, 25, November 14, 21, December 18 and 31. Log of Physician Orders (Ex. 5 to Pl. Responses).     Plaintiff was first seen by Defendant Lopez on November 14, 2012. Lopez Aff. ¶ 3. At that time, he complained only of neck pain and headaches. Id. He did not mention thumb or shoulder pain. Id. Lopez prescribed

---

[3]Plaintiff avers that the only reason he received the x-rays when he did was because a nurse had given him the wrong medication and he was taken to the hospital for vomiting. Pl. Aff. ¶ 7. However, the record reveals that Plaintiff was taken to the hospital for vomiting on September 26, 2012. Pl. Medical Records (Ex. 7 to Pl. Responses). The radiology interpretation record indicates that x-rays were taken of Plaintiff's spine and left hand on September 21, 2012. Dr. Cunningham Aff. Ex. C. The medical records from Plaintiff's hospital visit on September 26, 2012, indicate that he presented with no apparent distress and no complaints and, upon exam, his neck and extremities appeared normal with a normal range of motion, Pl. Medical Records (Ex. 7 to Pl. Responses), although he avers that for the two weeks prior to September 26, 2012, he was in an "enormous amount of pain," he "could hardly move," "could not sleep," "could not wash [himself]," and "could not turn [his] neck, or move [his] left thumb." Pl. Aff. ¶ 13.

-3-

Tylenol for his pain. Id. at ¶ 4.

Due to his repeated complaints, on December 6, 2012, Dr. Cunningham ordered an MRI of Plaintiff's neck and back, which was approved by the administration at KCDC. Cunningham Aff. ¶ 13. The MRI revealed mild degenerative change and the radiologist's report indicated there was no destructive process, indicating to Dr. Cunningham that there was no injury. Id. at ¶ 14. Dr. Cunningham continued to prescribe pain medication and muscle relaxers. Id.

After further complaints from Plaintiff, in mid-December of 2012, Dr. Cunningham mentioned the possibility of consulting with an orthopedic physician. Id. at ¶ 15. Plaintiff avers that Dr. Cunningham told him he "needed a specialist." Pl. Aff. ¶ 19. The medical records reveal only a notation on December 17, 2012, of "referred to Camden Bone & Jt." Pl. Medical Records Bates No. 59 (Ex. 31 to Pl. Responses). Dr. Cunningham avers that he explained to Plaintiff that it was not medically necessary and may not help with his complaints. Cunningham Aff. ¶ 15. He also explained that, because Plaintiff's diagnosis of muscle strain was not serious or emergent, there would be no need for immediacy for such a consult. Id. Dr. Cunningham conferred informally with a colleague in orthopedic medicine, who concurred that Plaintiff's condition was not serious or emergent such that orthopedic treatment was necessary, but it was an optional course. Id. at ¶ 16. Dr. Cunningham explained to Plaintiff that, because he was uninsured, obtaining approval and funding for an elective visit to a specialist could be difficult to obtain and that he or a family member could pre-pay for the visit if he wanted to see the orthopedist immediately. Id. at ¶ 17.

On December 21, 2012, a nurse attempted to schedule an appointment with Camden Bone and Joint, but was told that prepayment was necessary. Pl. Medical Records Bates No. 61 (Ex. 31 to Pl. Responses). When Defendant Lopez conferred with the Director, she was told that KCDC

would not pay for an appointment with Camden Bone and Joint. Id. Dr. Cunningham noted on January 8, 2013, that Plaintiff understood that the referral could not be made. Id. Plaintiff avers that Dr. Cunningham was frustrated with the administration at KCDC for refusing to approve a consult with an orthopedist. Pl. Aff. ¶ 18.

Plaintiff was seen in the medical department at least two more times in December of 2012, but was not seen by an orthopedist. Id. at ¶¶ 18-20. Plaintiff avers that Dr. Cunningham instructed him to do arm rotations and pushups to try to get his shoulder back into place, but that these exercises caused more pain and damage. Pl. Aff. ¶¶ 16-17. Dr. Cunningham avers that he recommended range of motion exercises for Plaintiff and demonstrated how to do them, but never instructed him to do push-ups. Cunningham Aff. ¶ 22. Plaintiff filed this action in state court on January 23, 2013.

Subsequent to filing this action, Plaintiff was transferred out of KCDC to a South Carolina Department of Corrections (SCDC) facility in April of 2013. At that time, he reported no fractures or other physical abnormalities relating to his shoulder, thumb or spine. Pl. Medical Records, Bates No. 94-95 (Ex. 31 to Pl. Responses). He first complained of a problem with his shoulder in September of 2013. Id. at Bates No. 92-93. The x-ray of his right shoulder taken as a result of his September 2013 complaint revealed no acute fractures or dislocations. Id. at Bates No. 46. Plaintiff's subsequent visit to an orthopedist in December of 2013 resulted in a treatment recommendation that was substantially similar to the treatment received by Plaintiff while he was at KCDC–pain medication, anti-inflammatory drugs, and range of motion exercises. Id. at Bates No. 91.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## VI. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff brings this action in part pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment-deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical

needs of the detainee." Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990) (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988)). In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). In the case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. at 103–105 (footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 107. There, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), ... nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Miltier v. Beorn, 896 F.2d 848, 841 (4th Cir.1990). Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

Defendants first argue that Plaintiff fails to show he had a serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citing Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999)). Plaintiff asserts that he suffered a dislocated shoulder and thumb as a result of his fall in the shower, however, he presents insufficient evidence to support this assertion.[4] There is some support in the record that Plaintiff suffered a fracture. See Radiology Interpretation of X-rays taken September 21, 2012 (Ex. 3 to Pl. Responses) ("There is a small anterior fractured osteophyte off the anterior inferior endplate of C4."). However, Plaintiff provides no medical testimony to provide any context to this report. Dr. Cunningham read the x-rays as consistent with his initial diagnosis of a minor muscle strain. Cunningham Aff. ¶ 7. Nevertheless, even though the evidence in the record does not support Plaintiff's representation of the injuries he suffered following his fall in the shower, it is undisputed that Dr. Cunningham believed that treatment in the form of pain medication, muscle

---

[4] In support of these allegations, Plaintiff cites to his own affidavit (Ex. 30 to Pl. Responses) and pictures of his hands and shoulders (Exs. 1 and 2 to Pl. Responses).

relaxers, and anti-inflammatory medication was warranted.

Plaintiff presents sufficient evidence to create an issue of fact as to whether he suffered a serious medical need. However, he fails to show that any of the Defendants were deliberately indifferent to his need. Plaintiff was seen by medical staff on numerous occasions regarding the pain in his thumb, neck and back, beginning the day after he first submitted a written request. He was given prescriptions for pain relievers and muscle relaxers on several occasions. X-rays and an MRI were ordered in an effort to determine the cause of and appropriate treatment for his pain, all of which confirmed Dr. Cunningham's initial impression that Plaintiff had suffered minor muscle strain and that the course of treatment (pain medication and muscle relaxers) was appropriate. The treatment received by Plaintiff hardly rises to the level of deliberate indifference. Courts have held that continuous care such as that received by Plaintiff here does not rise to the level of gross incompetence. See, eg, Estelle, 429 U.S. at 107 (finding no deliberate indifference where plaintiff was seen by medical personnel on seventeen occasions in a three month period); VanDyke v. SWVJ Abington Facility, 2012 WL 5472041 (W.D.Va. 2012) (holding plaintiff made an insufficient showing of deliberate indifference where each time a sick call was made, a medical professional met with the prisoner and prescribed treatment); Jones v. Johnson, 2009 WL 3614476 (W.D.Va. 2009) (finding no deliberate indifference where plaintiff received numerous evaluations, treatments, and alternative prescriptions). No reasonable juror could conclude that Plaintiff's treatment was so grossly incompetent, inadequate or excessive as to shock the conscience, and, thus, summary judgment is appropriate.

To the extent Plaintiff argues that KCDC's failure to approve a visit to an orthopedist constitutes deliberate indifference, that argument fails. "Although the Constitution does require that

prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975). Prison officials implement the type and amount of medical treatment at their discretion. See Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir.2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and kind of medical care" an inmate received); Johnson v. Doughty, 433 F.3d 1001 (7th Cir.2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); Faison v. Rosado, 129 F. App'x 490, 492 (11th Cir.2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim"). Dr. Cunningham opined that any visit to an orthopedic doctor was not medically necessary, but merely elective[5], Cunningham Aff. ¶ 15, and prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. See Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.1990).[6] Plaintiff's belief that he should have seen an orthopedist is insufficient to show that KCDC's decision not to approve such a visit was a constitutional violation. Plaintiff continued to receive

---

[5]Although Plaintiff avers that Dr. Cunningham told him he "needed a specialist," Pl. Aff. ¶ 19, this statement falls short of an indication that a visit to an orthopedist was medically necessary or emergent.

[6]See also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality or supervisory employee may be held liable under § 1983 only for an official policy or custom that inflicts an injury on a citizen of a constitutional dimension).

treatment after KCDC officials decided against approving an elective visit to an orthopedic doctor. "The Eighth Amendment does not forbid prison officials from considering cost in determining the appropriate course of treatment so long as the treatment does not put the prisoner at risk of serious injury and the decision was not made with deliberate indifference. It only becomes unacceptable if prison officials make health care decisions solely upon cost considerations without any medical rationale." Taylor v. Barnett, 105 F.Supp.2d 483, 489 n.2 (E.D.Va. 2000). Plaintiff fails to present sufficient evidence to show that his inability to see an orthopedic doctor put him at risk for serious injury. In fact, when Plaintiff was transferred out of KCDC to a South Carolina Department of Corrections (SCDC) facility in April of 2013, he reported no fractures or other physical abnormalities relating to his shoulder, thumb or spine. Pl. Medical Records, Bates No. 94-95 (Ex. 31 to Pl. Responses). He first complained of a problem with his shoulder in September of 2013. Id. at Bates No. 92-93. The x-ray of his right shoulder taken as a result of his September 2013 complaint revealed no acute fractures or dislocations. Id. at Bates No. 46. Plaintiff's subsequent visit to an orthopedist in December of 2013 resulted in a treatment recommendation that was substantially similar to the treatment received by Plaintiff while he was at KCDC–pain medication, anti-inflammatory drugs, and range of motion exercises. Id. at Bates No. 91.

Furthermore, Plaintiff fails to present sufficient evidence to show that the decision not to approve an orthopedic visit was based solely on cost concerns without any medical rationale. Dr. Cunningham determined that a visit to an orthopedist was not medically necessary but was an option. See Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008) (holding that failure to schedule elective surgery did not rise to the level of deliberate indifference); Martin v. Bowman, 48 F.3d 1216, 1995 WL 82444, *4 (4th Cir. 1995) (finding no deliberate indifference where physicians

described recommended knee surgeries as elective). In finding that decisions not to authorize elective knee surgeries for pretrial detainees did not rise to the level of constitutional violations, the Fourth Circuit reasoned that the status of an inmate as a pretrial detainee is a relevant consideration: "Plaintiffs are pretrial detainees who at any time during their detention could have been released or transferred to another facility with little warning. A local government's interest in limiting the cost of detention justifies providing no more that a reasonable level of medical care to pretrial detainees." Martin, 1995 WL 822444, *4 (citing Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988)). For these reasons, Plaintiff fails to show that the County Defendants' decision not to refer Plaintiff to an orthopedist was so grossly incompetent, inadequate or excessive as to shock the conscience, and, thus, summary judgment is appropriate.

  **B. State Law Claim**

Plaintiff also asserts a claim for gross negligence against Kershaw County and Southern Health Partners. However, if the district judge accepts this Report and Recommendation, the original federal jurisdiction claim will be dismissed and the only remaining claim will be Plaintiff's state law claim. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the

undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law cause of action.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that the Southern Health Defendants' Motion for Summary Judgment (Document # 32) and the County Defendants' Motion for Summary Judgment (Document # 33) be granted as to Plaintiff's § 1983 cause of action and that the remaining state law claim be remanded to the Kershaw County Court of Common Pleas.

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

July 16, 2014
Florence, South Carolina